IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERRIE BOSARGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:10cv1045-SRW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF OPINION

Plaintiff Terrie Bosarge brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## BACKGROUND

Plaintiff completed one year of college in 2000 and has worked as a server in restaurants, on assembly lines at a check printing business and brake part manufacturer, and, most recently, as a truck driver. (Exhibit 5E, R. 159-68; R. 145).[1] She filed the present application on May 8, 2008, when she was thirty-five years old, alleging that she became

---

[1] Plaintiff did not work between 2001 and 2006. A previous application for disability benefits was denied at the initial administrative level on February 3, 2004. (R. 134, 137, 154-55, 161).

disabled on January 15, 2008 due to "back, anxiety, depression/disc/shoulder/knees problems." (R. 130-32, 142, 154). She indicated that she cannot stand or walk for long periods of time due to severe back pain, and that she has shoulder pain and loss of strength in her hands. (R. 142).

After plaintiff's claims were denied initially, plaintiff requested a hearing before an ALJ, which was held on November 20, 2009. (R. 73-79, 85; R. 25-70). The ALJ issued a decision on May 10, 2010, concluding that plaintiff has severe impairments of "bilateral shoulder pain; status post lumbar fusion with residual pain; bilateral knee pain; obesity; right index crush injury; and mood disorder." (R. 13, 21). He found that as a result of her impairments, plaintiff in limited to less than the full range of sedentary work, with additional physical and mental non-exertional limitations. (R. 14). The ALJ determined that, while plaintiff's RFC precluded performance of her past relevant work, there are other jobs existing in significant numbers in the national economy that plaintiff can perform. (R. 20). Plaintiff sought review of the ALJ's unfavorable decision by the Appeals Council, which denied review on October 13, 2010, leaving the ALJ's decision as the final decision of the Commissioner. (R. 1-6). Plaintiff filed the present appeal on December 9, 2010. (Doc. # 1).

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole

to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff raises two issues in her appeal to this court:

1. The ALJ erred in finding plaintiff able to perform work as a food checker, dispatcher, and telephone solicitor, as the Dictionary of Occupational Titles ("DOT") indicates that those jobs entail a reasoning level of "3," a level beyond plaintiff's mental capacity.

2. The ALJ erred in failing to accord adequate weight to the opinion of plaintiff's treating physician, Dr. Howell, relying instead on the conclusions of a consulting psychiatrist and a consulting internist who each examined the plaintiff only once.

(Plaintiff's brief, pp. 6-15).

### VE Testimony versus the DOT

With regard to plaintiff's mental functional capacity, the ALJ concluded that plaintiff

3

is limited to "simple routine tasks, involving no more than simple, short instructions and simple work-related decisions with few work place changes" and, further, to "frequent interaction with the general public, cowork[er]s, and supervisors." (R. 14). Plaintiff argues:

> [W]hen questioning the Vocational Expert, the ALJ provided a hypothetical that limited [plaintiff's] abilities to "unskilled work activity defined as simple, routine tasks involving no more than simple, short instructions and simple work related decisions with few work place changes" (Tr. 62). Despite this designation, the Vocational Expert provided the occupations of food checker, dispatcher, and telephone solicitor, all of which have an SVP of "3" and are considered to be semi-skilled work. According to the Dictionary of Occupational Titles, jobs which entail an SVP of "3" require over 1 month up to and include three months to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. As such, there is a conflict between the representative occupations provided by the Vocational Expert and the ALJ's hypothetical involving only unskilled work.

(Plaintiff's brief, pp. 7-8)(footnote omitted). Plaintiff points to the requirement of Social Security Ruling 00-4p that the ALJ "elicit a reasonable explanation" for an apparent conflict between VE testimony and the DOT and argues that the ALJ "erred in failing to elicit a reasonable explanation from the vocational expert for the apparent conflict between the reasoning levels." (Plaintiff's brief, pp. 8-9).

At the hearing, Dr. Randall McDaniel testified as a vocational expert; upon inquiry by the ALJ, plaintiff's counsel responded that he had no objection to Dr. McDaniel's testifying as a vocational expert. (R. 58; <u>see also</u> Exhibit 9B). As plaintiff notes, the ALJ included plaintiff's limitation to "unskilled work activity defined as simple, routine tasks involving no more than simple, short instructions and simple work related decisions with few

work place changes" in his hypothetical questions to Dr. McDaniel. (R. 62). In the testimony upon which the ALJ relied, Dr. McDaniel stated that an individual with the identified mental limitations could perform the jobs of food checker (DOT # 211.482-014), dispatcher (DOT # 913.367-010) and telephone solicitor (DOT # 299.357-014). (R. 62-67). On questioning by the ALJ, Dr. McDaniel acknowledged that the telephone solicitor and dispatcher jobs each had an SVP of "3" but that, based on his personal experience – described earlier in his testimony as "over 30 years at looking at jobs and talking to employees that work in various jobs in our economy" – these jobs could be performed at an unskilled level. (R. 64-67). The ALJ addressed this issue in his written decision, stating, "During his testimony, the vocational expert also identified two jobs at the low end of the semi-skilled that are actually performed in the economy at the unskilled level. He further testified that these discreipancies from the DOT are based on his years of experience as a vocational counselor." (R. 21). Thus – as to these two positions – the ALJ questioned the VE about the conflict between his testimony and the DOT, elicited an explanation for the discrepancy, and explained his rationale for relying on the VE testimony. To the extent that plaintiff contends that the VE's explanation was not "reasonable," the court rejects plaintiff's argument.[2]

With regard to the third position of food checker – which accounted for only 600 of the 7,630 jobs identified in Alabama and only 31,000 of the 627,000 jobs identified at the

---

[2] The DOT listings cited by plaintiff show a date last updated ("DLU") of 1977 for the job of dispatcher and 1988 for the job of telephone solicitor. (See Plaintiff's brief, p. 7 nn. 2-4 and cited sources).

national level by the vocational expert (see R. 21, 63-67) – the vocational expert testified that the job is sedentary and unskilled. (R. 63, 64-65). The VE further testified, in response to a direct question from the ALJ, that his testimony as to the job of "food checker" is consistent with the DOT. (R. 63). While it appears that the DOT identifies the "food checker" job at the same SVP level as the dispatcher and telephone solicitor positions, the court declines to find that the ALJ erred by failing to elicit an explanation for a conflict which the VE testified does not exist. In the Eleventh Circuit, an ALJ is entitled to rely on vocational expert testimony even when it conflicts with the Dictionary of Occupational Titles. Jones v. Apfel, 190 F.3d 1224 (11th Cir. 1999).[3] Additionally, even if this were error, it is harmless. The food checker job accounts for a small percentage (less than five percent) of the jobs identified by the ALJ in his decision as representative jobs in the national economy within plaintiff's capabilities. Also, the vocational expert included a fourth job in response to the ALJ's hypothetical question – that of surveillance system monitor, DOT # 379.367-010, unskilled and sedentary, 160 jobs in Alabama and 37,000 jobs nationwide. (R. 66).[4] While the ALJ did not list this job, which exists in the national economy at a greater number than the food checker job, as among the representative occupations plaintiff

---

[3] Although SSR 00-04p post-dates the decision in Jones, the Eleventh Circuit has recently reaffirmed its holding. See Hurtado v. Astrue, 2011 WL 1560654 (11th Cir. Apr. 25, 2011) and Jones v. Astrue, 2011 WL 1490725 (11th Cir. Apr. 19, 2011).

[4] The Dictionary of Occupational Titles – consistent with the VE's testimony that this job is unskilled – lists the surveillance system monitor job as requiring specific vocational preparation at a level "2," one level below the level "3" described by the VE as the "lowest level of semi-skilled." See R. 66; http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03B.HTM (accessed October 13, 2011).

can perform, he could have done so. Thus, even if the ALJ erred in failing to resolve a discrepancy between the VE testimony and the DOT as to the food checker job, the error was harmless. Accordingly, the court finds plaintiff's argument that the jobs identified by the ALJ are not within her mental residual functional capacity without merit.

## Treating Physician's Opinion

"If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight." Roth v. Astrue, 249 Fed. Appx. 167, 168 (11th Cir. 2007)(unpublished opinion)(citing 20 C.F.R. § 404.1527(d)(2)). "If the treating physician's opinion is not entitled to controlling weight, ... 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" Id. (citing Crawford v. Commissioner, 363 F.3d 1155, 1159 (11th Cir. 2004)). "If the ALJ finds such good cause and disregards or accords less weight to the opinion of a treating physician, he must clearly articulate his reasoning, and the failure to do so is reversible error." Pritchett v. Commissioner, Social Security Admin, 315 Fed. Appx. 806 (11th Cir. 2009)(unpublished opinion)(citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). "When the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. Schuhardt v. Astrue, 303 Fed. Appx. 757, 759 (11th Cir.

2008)(unpublished opinion)(citing Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)).

The Eleventh Circuit has found good cause for discounting a treating physician's report when the report "'is not accompanied by objective medical evidence or is wholly conclusory.'" Crawford, *supra* (quoting Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir.1991)).  Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records," Roth, *supra* (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) or "when the opinion appears to be based primarily on the claimant's subjective complaints of pain." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007)(citing Crawford, *supra*).  "The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. Carson v. Commissioner of Social Sec., 373 Fed. Appx. 986, 988 (11th Cir. Apr. 20, 2010)(citing Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985)).

Plaintiff contends that the ALJ committed reversible error by failing to accord adequate weight to the opinion of Dr. Howell, her treating physician, and by relying on the conclusions of two consultative examiners, a psychologist and an internist.  Plaintiff's record of treatment by Dr. Howell at the Autauga Clinic in Autaugaville is included in Exhibit 6F. Dr. Hall saw plaintiff on April 14, 2006, when she came in to have a mole biopsied.  Plaintiff also reported knee arthritis and "also want[ed] some Xanax."  On examination, Dr. Howell noted, "In general, this is a healthy, slightly obese 32-year old white female in no acute

distress." He assessed "Mole[,]" and gave plaintiff prescriptions for Naprosyn, Lasix and Xanax. (R. 239).[5]

Dr. Howell next saw plaintiff over two years later, on June 2, 2008, a few weeks after plaintiff filed the present application for benefits. At this visit, plaintiff complained of "anxiety, bursitis, and tendonitis in both of her shoulders" and requested a DOT physical. She reported that "[s]he is in good health." Dr. Howell described her as "[a] healthy 35-year-old white female in no acute distress." On examination of her extremities, he noted "[s]ome crepitus and popping of her shoulders; however, good range of motion." He assessed anxiety and bursitis/arthritis of the shoulders. (R. 238).

Plaintiff next returned to Dr. Howell almost eight months later, on January 22, 2009. She complained of bilateral ear pain for the previous week and said that she "wants a refill on Xanax for anxiety and soma for her chronic leg and arm pain. On examination of her extremities, Dr. Howell noted only, "Good range of motion." He assessed earache, anxiety and restless leg syndrome, and gave plaintiff prescriptions for Xanax and Soma. (R. 237).

Plaintiff's last visit of record to Dr. Howell was three and a half months later, on May 7, 2009. She reported severe back pain in her middle back and that she had gone to the emergency room in Prattville the previous night and received a shot for pain.[6] She stated that

---

[5] The biopsy did not reveal cancer. (R. 240).

[6] The ER treatment note is not included in the administrative transcript.

her pain was still at a level of "9" on the pain scale.[7] Dr. Howell made no notations in the physical examination section of the treatment note form. He diagnosed chronic back pain, degenerative disc disease of the spine, anxiety, and osteoarthritis/bursitis of the knee and shoulders. He prescribed Soma, Xanax and Lortab. (R. 236). At that office visit, Dr. Howell completed a "Clinical Assessment of Pain" form circling responses to indicate his opinion that plaintiff's "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work," that physical activity would increase her pain greatly "and to such a degree as to cause distraction from tasks or total abandonment of task," and that "[d]rug side effects can be expected to be severe and to olimit effectiveness due to distraction, in attention [sic], drowsiness, etc." (R. 241). Dr. Howell also completed a physical capacities evaluation indicating that plaintiff: can lift ten pounds occasionally and five pound frequently; can sit "0" hours and stand or walk "0" hours in an 8-hour work day; and would likely be absent from work "[m]ore than four days per month." He indicated that plaintiff can: "rarely" bend or stoop, push or pull arm or leg controls, reach, or operate motor vehicles; never climb or balance or work with or around hazardous machinery; occasionally perform gross or fine manipulation; and occasionally be subjected to "environmental problems." In response to the prompt, "Please explain and briefly describe the degree and

---

[7] When plaintiff sought treatment in February 2005 at the Mostellar Medical Center in Bayou La Batre for a urinary tract infection, Dr. Maria Young observed that plaintiff was "in no apparent distress, despite her ranking her pain as 9/10." (R. 276). In a June 1, 2007, visit to Dr. Young, plaintiff sought treatment for ear pain at a reported level of 8/10. On that occasion, Dr. Young also observed that plaintiff was "[i]n no apparent distress." (R. 269).

basis for any restriction checked above[,]" Dr. Howell wrote, "No bending, stooping, [illegible], lifting, climbing" and "no prolonged sitting or standing." He indicated that plaintiff does not require an assistive device to ambulate. (R. 242).

In a consultative physical examination with Dr. Jani on June 25, 2008, plaintiff reported that her pain was 8/10 and "[c]onstant." She also reported pain at a level 8/10 in her shoulders and level 5/10 in her knees. After a physical examination, in which he observed, *inter alia*, negative straight leg raising on the left and right sides and "[n]o evidence of any palpable muscle spasm, localized tenderness, or crepitation," good grip bilaterally, and motor strength of 5/5 bilaterally in upper and lower extremities, Dr. Jani diagnosed back, shoulder and knee pain. He indicated that plaintiff "can stand or walk about 6 hours without any restrictions," has "no restrictions while sitting," and "[c]an lift and carry 100 pounds occasionally without any restrictions and 50 pounds frequently. He stated, further, that "[p]osturally, manipulatively, and environmentally, there are no restrictions." (Exhibit 1F, R. 199-203).

In a psychological evaluation conducted on July 7, 2008, Dr. David Hall assessed "Mood Disorder, NOS" and concluded that plaintiff "appears **unimpaired** in her ability to understand, remember, and carry out instructions and to respond appropriately to supervision, co-workers, and work pressures in a work setting." (Exhibit 2F, R. 205-08)(emphasis in original).

The ALJ stated that he gave "little weight to the opinion of Dr. Howell, a treating

11

physician who has only seen the claimant four times in a 3-year period." (R. 19). The ALJ noted that, "[i]n evaluating a treating source's opinion, the [ALJ] must evaluate the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship, in addition to evaluating the supportability, consistency, specialization and other factors." (Id.). The ALJ gave substantial weight to the opinions of Dr. Hall, "a consultative examiner specializing in psychiatry" and to the opinion of Dr. Jani, "an internist [who] is qualified to offer an opinion regarding the clamant's physical status and [whose] opinion is generally consistent with the medical record." (Id.) As to Dr. Howell, the ALJ noted further:

> In this case, there is limited medical evidence from Dr. Howell as a treating physician who has only seen the claimant fourt times in a 3-year period. Furthermore, Dr. Howell's opinion is contradicted by both consultative examinations showing minimal limitations. Dr. Howell's report is also contradicted by the claimant's testimony. In the report, Dr. Howell indicated that the claimant could only sit, stand or walk zero hours in an 8-hour day. At the hearing, the claimant testified that she could walk and sit up to one hour at a time and stand up to 15 minutes at a time.[8] Give the nature of Dr. Howell's treatment relationship with the claimant and the contradictions in his opinion in relation to other objective evidence and the claimant's testimony, the undersigned concludes that the medical opinion of Dr. Howell is entitled to little weight.

(Id.). As noted above, the ALJ may reject a treating physician's opinion when the evidence supports a contrary conclusion. Here, the ALJ articulated adequate reasons, supported by substantial evidence of record, for assigning little weight to Dr. Howell's opinion; he did not err by relying on the contrary opinions of the consultative examiners.

---

[8] See R. 33-34 (plaintiff's hearing testimony).

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law. Accordingly, the decision is due to be AFFIRMED.  A separate judgment will be entered.

DONE, this 19th day of October, 2011.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE